BANNUM, INC., Appellant,

v.

CITY OF ST. LOUIS, Missouri, Respondent.

No. ED 87218.

Missouri Court of Appeals, Eastern District, Division Five.

July 11, 2006.

Steve Koslovsky, St. Louis, MO, for Appellant.

Carl W. Yates III, City of St. Louis Law Department, St. Louis, MO, for Respondent.

ROY L. RICHTER, Judge.

Bannum, Inc. appeals the trial court's judgment granting the City of St. Louis's motion for summary judgment. We affirm.

## I. BACKGROUND

Bannum, Inc., ("Bannum") a Kentucky corporation, operates halfway houses for federal prisoners under contract with the U.S. Department of Justice, Bureau of Prisons ("BOP"). In March 2000, BOP published a request for proposals for a St. Louis contract. It is typical practice for a bidder to show that it has an available site where a halfway house may be legally operated.

Bannum attempted to identify sites that would comply with the City of St. Louis ("City") Zoning Code and settled on 4254 Gustine Avenue ("Gustine Property") which is located in an industrial area and had previously been used as a warehouse. Under the City's Zoning Code, Bannum's proposed use for the property did not fall under any prohibitions prescribed in the applicable zoning district. In addition, a registered land surveyor ascertained that the Gustine Property matched a further section of the Zoning Code requiring that at least forty percent or more of a building's frontage be occupied by dwellings in order for a building to be converted for dwelling purposes.

Bannum submitted its bid to BOP. After BOP accepted Bannum's proposal, Bannum requested zoning approval from the City. Residents in the area opposed the planned halfway house, including an alderman for the ward where the halfway house was to be located. Also, the director of the planning department informed BOP that the Gustine Property actually fronted an adjoining street and therefore failed to meet the zoning requirement with regard to the percentage of space occupied by dwellings. Bannum also failed to file the required Neighborhood Consent Petition. The planning director waited to render a formal decision and ultimately denied Bannum's application. Bannum appealed to the Board of Adjustment but withdrew the appeal. Bannum pursued a substantive due process claim under 42 U.S.C. Section 1983 in U.S. federal district court. The district court issued a Memorandum and Order stating:

"**IT IS HEREBY ORDERED AND ADJUDGED and DECREED** that defendant's Motion for Summary Judgment is

granted and Plaintiff's Complaint is **DIS-MISSED** without prejudice for lack of subject matter jurisdiction." (emphasis original).

Bannum immediately refiled its action in the City of St. Louis Circuit Court on substantive due process grounds and later amended its petition to allege a violation of equal protection through racial discrimination against future halfway house residents. The circuit court granted summary judgment for the city on the basis of res judicata. Bannum appeals.

## II. DISCUSSION

We review a grant of summary judgment de novo. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. *Id.*

Summary judgment is appropriate only when the record demonstrates that there are no genuine disputes regarding material facts and that the moving party is entitled to judgment as a matter of law. The movant bears the burden of establishing both a legal right to judgment and the absence of any genuine issue material fact required to support the claimed right to judgment. *Id.* at 376–380.

Bannum presents two points on appeal. It argues that the trial court erred by granting the City's motion for summary judgment on the basis of res judicata because the district court's judgment was a dismissal without prejudice for lack of subject matter jurisdiction, not a decision on the merits of Bannum's claim. In addition, Bannum argues that even if the district court's judgment was a decision on the merits with res judicata effect, it should have dismissed Bannum's first amended petition and granted Bannum leave to amend its petition to reflect purely state law claims. We affirm the trial court's judgment because summary judgment was appropriate. However, we base this holding not on res judicata, but on Bannum's lack of standing and Bannum's failure to exhaust its administrative remedies.

 Res judicata is a well established doctrine. "A final judgment, rendered on the merits, by a court of competent jurisdiction is conclusive as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Creative Walking, Inc. v. American States Ins., Co.*, 25 S.W.3d 682, 686 (Mo.App. E.D.2000). Missouri law tracks the Eighth Circuit in defining the prerequisites for res judicata. *Compare Chesterfield Village, Inc. v. City of Chesterfield*, 64 S.W.3d 315 (Mo. Banc 2002) with *Biermann v. United States*, 67 F.Supp.2d 1057 (E.D.Mo.1999). Res judicata applies where "the prior judgment was rendered by a court of competent jurisdiction, (2) the decision was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases." *Biermann*, 67 F.Supp.2d at 1060. This court must determine whether the district court decision constituted a final judgment on the merits. We hold that it did not.

 There is no dispute that the district court's judgment became final and that Bannum did not appeal. However, whether the district court's judgment was a judgment on the merits remains a contested matter, one that requires a close inspection and interpretation of both the words of the district court's judgment and order and memorandum. Bannum is correct to assert that in construing a judgment, ambiguities between the decretal and recital portions of a judgment will be resolved in

favor of the decretal portions. *Casper v. Lee,* 362 Mo. 927, 245 S.W.2d 132 (1952). However, at issue here are not ambiguities created between the decretal and recital portions of a judgment. The district court created a contradiction within the decretal portion of its judgment by stating both that defendant's motion for summary judgment was granted, a decision on the merits with preclusive effect, and that plaintiff's complaint was dismissed without prejudice for lack of subject matter jurisdiction, a decision that does not prevent further litigation of the same claim. Consequently, this court will look to both the language of the district court's judgment as well as its accompanying order and memorandum.

The district court's memorandum and order reveals no intent to render a judgment on the merits of Bannum's Section 1983 claim. By its words, the district court dismissed "without prejudice" for lack of subject matter jurisdiction indicating that plaintiff could bring another action for the same cause. Rule 67.01; *O'Reilly v. City of Hazelwood,* 850 S.W.2d 96, 98 (Mo. banc 1993); *Heitman v. Brown Group,* 638 S.W.2d 316 (Mo.App. E.D. 1982). Although it is true that the words "without prejudice" are not dispositive (*See Duvall v. Lawrence,* 86 S.W.3d 74, 83 (Mo. App. E.D.2002)), when combined with the nature of the dismissal, it is apparent that the district court did not intend for its decision to have preclusive effect. A prior judgment based on lack of subject matter jurisdiction does not bar a plaintiff from bringing an action on the same cause in a court with jurisdiction. A dismissal for lack of subject matter jurisdiction is not res judicata as to the merits of the cause. *Stix & Co. v. First Missouri Bank,* 564 S.W.2d 67 (Mo.App.1978).

▇ Next Bannum argues that even if the district court's judgment was a decision on the merits with res judicata effect,

the trial court should have granted Bannum leave to amend its petition to reflect purely state law claims. We disagree.

▇ Bannum lacks standing to bring any claim on behalf of its potential halfway house residents. In Missouri, "standing is a jurisdictional matter antecedent to the right to relief." *Farmer v. Kinder,* 89 S.W.3d 447, 451 (Mo. banc 2002) (citing *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 n. 6 (Mo. banc 1982)). To determine whether a party has standing is to ask "whether the persons seeking the relief have the right to do so." *Id.* (citing *State ex rel. Twenty–Second Circuit v. Jones,* 823 S.W.2d 471, 475 (Mo. banc 1992)). If a court determines that a party lacks standing, "the court necessarily does not have jurisdiction of the question presented and may not enter a judgment on that question for or against any of the parties." *Western Casualty & Surety Co. v. Kansas City Bank & Trust,* 743 S.W.2d 578, 580 (Mo.App. W.D.1988).

▇ Bannum has asserted a Section 1983 Equal Protection claim based on a zoning denial alleged to have been based on the race of the future inhabitants of Bannum's half-way house, not the race of Bannum. The United States Supreme Court has held that a plaintiff generally must assert his own legal rights and interests and cannot base a claim for relief on the legal rights of third parties. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Although the Supreme Court has recognized that standing may exist when a plaintiff sues on behalf of a third party, a number of factual requirements must first be met. The litigant must have (1) suffered an injury in fact, giving him a sufficiently concrete interest in the outcome, (2) the litigant must have a close relation to the third party, and (3) there must exist some hindrance to third party's ability to protect himself. *Powers*

*v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (quoting *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). The Court has applied this analysis in the context of *Batson* challenges allowing criminal defendants to challenge their convictions by raising the rights of jurors. *Powers,* 499 U.S. at 410–11, 111 S.Ct. 1364. In addition, the Court has applied this analysis within the abortion context allowing litigants to raise third party rights to avoid future prosecution. *See, e.g., Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), *cited by Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

Bannum has failed to prove the second prong set forth in *Powers.* Bannum has not shown that it has a sufficiently close relation to the third party at issue in this case, unascertained residents of a potential halfway house. Unlike the plaintiff in *Powers* whose criminal liability was integrally tied to the constitutional rights of jurors, Bannum's relationship with potential halfway house residents is attenuated. Bannum's rights are not crucially connected to the residents' rights. Instead, the connection is remote. The relationship between a property owner who contracts with the federal government to run a federal institution and its halfway house residents is too distant to enable the property owner to bring suit on behalf of this third party.

Having determined that Bannum lacks standing to bring a Section 1983 constitutional claim, we note further that Bannum is barred from bringing non-constitutional state claims. Bannum failed to follow the City's requirements before seeking zoning approval and failed to exhaust the available administrative remedies as required by law. "No civil action may be brought by an offender, except for a constitutional deprivation, until all administrative remedies are exhausted." Section 506.384 RSMo. A party aggrieved by an administrative zoning decision must first exhaust its administrative remedies before it can seek judicial relief. *State ex rel. Forget v. Franklin County,* 809 S.W.2d 430, 432 (Mo.App. E.D.1991).

After being denied zoning approval and filing an appeal, Bannum sent a letter to the Board of Adjustment indicating that it was no longer pursuing its administrative appeal because the City's acts had already caused Bannum to lose its option lease and its federal contract for its halfway house. Because Bannum cannot assert the constitutional rights of its unascertained future residents, it was required to pursue all administrative remedies prior to filing suit.

### III. CONCLUSION

The judgment is affirmed.

GLENN A. NORTON, C.J., and LAWRENCE E. MOONEY, J., Concur.