**STATE of Missouri, Respondent,**

v.

**Rick CUSUMANO, Appellant.**

No. ED 98027.

Missouri Court of Appeals, Eastern District, Division Four.

June 4, 2013.

Margaret M. Johnston, Assistant Public Defender, Columbia, MO, for appellant.

Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Rick Cusumano (Defendant) appeals the judgment of the Circuit Court of St. Louis County convicting him of forcible rape. Defendant contends the trial court plainly erred in: (1) allowing the State to prosecute Defendant for forcible rape in violation of his right to be free of double jeopardy; and (2) overruling Defendant's objections to the admission of victim impact testimony during the guilt phase of trial. We affirm.

### Factual and Procedural Background

At approximately 10:00 p.m. on August 5, 1988, C.Z. (Victim) went for a walk in her neighborhood. As she was returning home, she passed a man who was standing at a mailbox at the end of a driveway. The man grabbed Victim from behind, covered her mouth with a gloved hand, and said, "I've got a gun, if you don't cooperate I'll blow your head off." When Victim struggled, the man hit Victim on her head with a gun.

The man dragged Victim to a backyard where a second man was waiting. Both men wore bandanas over their faces.[1] The first man handed the gun to the second man, removed Victim's jogging shorts and underwear, and forced his penis into her vagina while the second man held the gun. Next, the first man forced Victim to put her mouth on his penis and perform oral sex. The first man then held the gun while the second man forced his penis into Victim's vagina.

The men ordered Victim not to watch them leave and threatened to kill her if she reported their crimes. After the men left, Victim put on her underwear and shorts, ran home, and told her husband about the assault. Husband drove Victim to the police department where Victim reported the crime. From the police department, Victim went to the hospital where a doctor administered a rape kit.

Forensic testing matched Defendant's DNA to DNA collected on August 5 and 6, 1988 from a beer can found at the scene of the assault and from Victim's underwear and body. On February 10, 2010, the State charged Defendant with two class A felony counts of aggravated forcible rape (Counts I and II) under Section 566.030 and one class A felony count of aggravated forcible sodomy (Count III) under Section 566.060. Mo.Rev.Stat. §§ 566.030.2, 566.060.2 (1988).[2] At the time of the charged crimes, Sections 566.030.2 and 566.060.2 provided that if, in the course of committing forcible rape or forcible sodomy, unclassified felonies, the defendant "display[ed] a deadly weapon ... in a threatening manner" or "subject[ed] the victim to deviate sexual intercourse or sexual intercourse with more than one person," the defendant committed the greater offense of aggravated forcible rape or aggravated forcible sodomy, which were class A felonies punishable by ten years to life imprisonment.[3] Mo.Rev.Stat.

---

1. Because both men's faces were covered, Victim was not able to identify Defendant as the first or second man.

2. All statutory references are to Revised States of Missouri 1988, unless otherwise indicated. See State v. Edwards, 983 S.W.2d 520, 521 (Mo. banc 1999) (holding that a defendant is to be tried for an offense as defined by the law that existed at the time of the offense).

3. Section 566.030.2 provided:

Forcible rape or an attempt to commit forcible rape as described in subsection 1 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening manner or subjects the victim to sexual intercourse or deviate sexual intercourse with more than one person, in which cases forcible rape or an attempt to commit forcible rape is a class A felony.

Mo.Rev.Stat. § 566.030.2. Similarly, subsection 566.060.2 stated:

Forcible sodomy or an attempt to commit forcible sodomy as described in subsection 1 of this section is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years, unless in the course thereof the actor inflicts serious physical injury on any person, displays a deadly weapon or dangerous instrument in a threatening

§§ 566.030.2, 566.060.2; *see State v. Gray,* 895 S.W.2d 241, 243 (Mo.App. S.D.1995).

The trial court held a two-day jury trial in September 2010. At the instructions conference, both sides submitted jury instructions for Count I (forcible rape) and Count III (forcible sodomy). As to Count I, the State submitted Instruction 6, based on MAI–CR3d 320.01.1A Forcible Rape: Aggravated (effective Jan. 1, 1987), which provided:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 5, 1988, in the County of St. Louis, State of Missouri, the defendant had sexual intercourse with [Victim] and

Second, that the defendant did so by the use of forcible compulsion, and

Third, that the defendant did so knowingly,

Fourth, that, in the course of this conduct, the defendant or another person displayed a deadly weapon in a threatening manner,

Fifth, that with the purpose of promoting or furthering the commission of forcible rape, the defendant acted together with another person in committing the offense,

then you will find the defendant guilty under Count I of forcible rape.

Defendant submitted Instruction 7 for the lesser included offense of forcible rape,[4] which did not require the jury to find that Defendant or another person displayed a deadly weapon in a threatening manner or

that Defendant acted together with another person in committing the offense. Instruction 7 stated:

As to Count I, if you do not find the defendant guilty of forcible rape as submitted in Instruction No. 6, you must consider whether he is guilty of forcible rape under this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt[:]

First, that on or about August 5, 1988, in the County of St. Louis, State of Missouri, the defendant had sexual intercourse with [Victim], and

Second, that defendant did so by the use of forcible compulsion, and

Third, that defendant did so knowingly,

then you will find the defendant guilty under Count I of forcible rape.

As to Count III, the State submitted Instruction 9 for aggravated forcible sodomy. Instruction 9 directed the jury:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 5, 1988, in the County of St. Louis, State of Missouri, the defendant or another person made [Victim] put her mouth on the penis of the defendant or another person, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that defendant or another person did so by the use of forcible compulsion, and

---

manner or subjects the victim to deviate sexual intercourse or sexual intercourse with more than one person, in which cases forcible sodomy or an attempt to commit forcible sodomy is a class A felony. Mo.Rev.Stat. § 566.060.2.

4. Under Section 556.046.1(1) an offense is a lesser included offense if "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Mo.Rev.Stat. § 556.046.1(1); *see also State v. Smith,* 592 S.W.2d 165, 166 (Mo. banc 1979).

Fourth, that defendant or another person did so knowingly,

Fifth, that in the course of this conduct, the defendant or another person displayed a deadly weapon in a threatening manner,

Sixth, that with the purpose of promoting or furthering the commission of that forcible sodomy, the defendant acted together with another person in committing the offense,

then you will find the defendant guilty under Count III of forcible sodomy.

Defendant submitted Instruction 10, an instruction for the lesser included offense of forcible sodomy, which stated:

As to Count III, if you do not find the defendant guilty of forcible sodomy as submitted in Instruction No. 9, you must consider whether he is guilty of forcible sodomy under this instruction.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt[:]

First, that on or about August 5, 1988, in the County of St. Louis, State of Missouri, the defendant made [Victim] put her mouth on the penis of the defendant, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that defendant did so by the use of forcible compulsion, and

Fourth, that defendant did so knowingly,

then you will find the defendant guilty under Count III of forcible sodomy.

The State's instruction for Count II, aggravated forcible rape based on accomplice liability, stated that:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about august 5, 1988, in the County of St. Louis, State of Missouri, another person had sexual intercourse with [Victim], and

Second, that another person did so by the use of forcible compulsion, and

Third, that another person did so knowingly,

Fourth, that, in the course of this conduct, the defendant or another person displayed a deadly weapon in a threatening manner,

Fifth, that with the purpose of promoting or furthering the commission of that forcible rape, the defendant acted together with another person in committing the offense,

then you will find the defendant guilty under Count II of forcible rape.

Defendant did not submit a lesser included offense instruction for Count II.

The trial court gave the jury the instructions submitted by both parties. The jury found Defendant guilty of forcible rape on Count I, as submitted in Defendant's Instruction 7, and forcible sodomy on Count III, as submitted in Defendant's Instruction 10. As to Count II, the jury was unable to reach a verdict and the trial court declared a mistrial. The trial court sentenced Defendant as a prior offender to two concurrent life sentences on Counts I and III and scheduled a new trial on Count II. This court affirmed Defendant's convictions on Counts I and III. *State v. Cusumano*, 358 S.W.3d 137 (Mo.App. E.D. 2011).

On January 3, 2011, the trial court conducted a second jury trial on Count II. After the close of evidence, the trial court instructed the jury to find Defendant guilty of forcible rape if it found:

First, that on or about August 5, 1988, in the County of St. Louis, State of Missouri, another person had sexual intercourse with [Victim], and

Second, that another person did so by the use of forcible compulsion, and

Third, another person did so knowingly, and

Fourth, that, in the course of this conduct, the defendant or another person displayed a deadly weapon in a threatening manner, and

Fifth, that neither defendant or another person was married to [Victim], and

Sixth, that with the purpose of promoting or furthering the commission of that forcible rape, the defendant acted together with another person in committing the offense[.]

The jury found Defendant guilty of forcible rape, and the trial court sentenced him to a term of life imprisonment, to run consecutive to Defendant's sentences for Counts I and III. Defendant appeals.

### Discussion

■ In his first point on appeal, Movant claims the trial court plainly erred in allowing the State to retry him on Count II, which charged Defendant with forcible rape under a theory of accomplice liability. Defendant maintains that, because the first jury found Defendant guilty of Counts I and III pursuant to instructions that did not require findings of accomplice liability or the display of a deadly weapon, collateral estoppel precluded the State from relitigating those issues in a second trial on Count II. In response, the State argues that collateral estoppel does not bar the State from relitigating the issues of a deadly weapon and accomplice liability because the first "jury did not 'acquit' Defendant of those offenses at the first trial."

■ Defendant concedes that he did not preserve his claim of double jeopardy for appellate review and therefore seeks plain error review. Even though Defendant did not preserve his double jeopardy argument, this court "will conduct plain error review of an unpreserved double jeopardy claim if the alleged double jeopardy violation is determinable from the face of the record." *State v. Roggenbuck,* 387 S.W.3d 376, 380–81 (Mo. banc 2012) (quotation omitted). To establish plain error, Defendant "bears the burden of demonstrating that an error so substantially affected his rights that a manifest injustice or miscarriage of justice has resulted therefrom." *Id.* at 381 (quotation omitted).

■ The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This protection applies to the states through incorporation into the Due Process Clause of the Fourteenth Amendment. *State v. Gray,* 347 S.W.3d 490, 506 (Mo.App. E.D.2011) (*citing Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)). "The Fifth Amendment's Double Jeopardy Clause protects a defendant from not only successive prosecutions for the same offense after acquittal or conviction but also from multiple punishments for the same offense." Id. (quotation omitted).

■ The Fifth Amendment guarantee against double jeopardy embodies the doctrine of collateral estoppel. *State v. Dowell,* 311 S.W.3d 832, 837 (Mo.App. E.D. 2010). "[C]ollateral estoppel bars relitigation of a specific fact or issue that was unambiguously determined by a previous jury." *State v. Simmons,* 955 S.W.2d 752, 760 (Mo. banc 1997); *see also Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). To ascertain what issues a jury must have decided when it reached a general verdict, a court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could

have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *State ex rel. Hines v. Sanders*, 803 S.W.2d 649, 650 (Mo.App. E.D.1991) (*quoting Ashe*, 397 U.S. at 445, 90 S.Ct. 1189). The defendant bears the burden of showing that his prior acquittal bars the present prosecution because the "verdict there necessarily decided the issues now in litigation." *Dowell*, 311 S.W.3d at 837. "Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *Id.* (quotation omitted).

 Collateral estoppel "does not even begin to come into play unless the defendant has been acquitted in the first trial." *State v. Moton*, 476 S.W.2d 785, 790 (Mo.1972). A jury acquits a defendant of a charge when it returns a verdict of not guilty.[5] *See e.g., State v. Peters*, 855 S.W.2d 345, 347 (Mo. banc 1993). Importantly, "Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense." *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006). Thus, "Missouri juries are allowed to consider the lesser included offenses if they 'do not find the defendant guilty' of the greater offense." *State v. Wise*, 879 S.W.2d 494, 517 (Mo. banc 1994) (*overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008)). By contrast, in states requiring a jury to "acquit first," juries cannot consider the lesser included offense until they have found the defendant "not guilty." *Id.* As the Supreme Court emphasized in *Wise*, the difference in terminology "carries meaning." *Id.*

At Defendant's first trial, the trial court submitted to the jury instructions for finding Defendant guilty: as to Count I, of either aggravated forcible rape or forcible rape; and, as to Count III, of either aggravated forcible sodomy or forcible sodomy. After deliberations, the jury returned verdicts finding Defendant guilty of the lesser offenses of forcible rape and forcible sodomy. In finding Defendant guilty of the lesser offenses, the jury did not, as Defendant asserts here, find him "not guilty" of aggravated forcible rape and aggravated forcible sodomy. Consequently, we cannot say that the first jury "unambiguously determined" that (1) Defendant did not act with another in committing the charged offenses and (2) neither Defendant nor another displayed a deadly weapon in a threatening manner. We therefore conclude that collateral estoppel did not bar prosecution of Count II for forcible rape under a theory of accomplice liability.

The cases upon which Defendant relies in support of his claim are inapposite. In each of the cases cited by Defendant, collateral estoppel applied because a prior jury acquitted the defendant of an offense and, in so doing, necessarily resolved in favor of the defendant a factual issue underlying the subsequent prosecution. *Ashe*, 397 U.S. at 446, 446, 90 S.Ct. 1189,; *Yeager v. U.S.*, 557 U.S. 110, 123, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009); *Dowell*, 311 S.W.3d at 839; *State ex rel. Hines*, 803 S.W.2d at 652. In *Ashe*, several men

---

**5.** A verdict "is the definitive answer given by the jury to the court concerning the matters of fact committed to the jury for their deliberation and determination." *State v. Casey*, 338 S.W.2d 888, 891 (Mo.1960) (*quoting* 23 C.J.S. Criminal Law § 1393). Missouri law requires the jury's verdict to be unanimous, in writing, signed by the foreperson, and returned in open court. Rule 29.01(a); *State v. Schumacher*, 85 S.W.3d 759, 761 (Mo.App. W.D. 2002).

robbed a group of poker players. 397 U.S. at 437, 90 S.Ct. 1189. After a jury acquitted the defendant of robbing one of the victims, a jury in a subsequent trial found defendant guilty of robbing a different victim. *Id.* at 439, 90 S.Ct. 1189. The U.S. Supreme Court held that, because the only contested issue at the first trial was whether the defendant was one of the robbers, the jury's verdict of acquittal collaterally estopped the State from trying the defendant for robbing a different victim during the same criminal episode. *Id.* at 446, 90 S.Ct. 1189. In *Yeager*, the State charged the defendant with multiple counts of fraud and insider trading, and the jury acquitted the defendant on the fraud counts but failed to reach verdicts on the insider trading counts. 557 U.S. at 114–15, 129 S.Ct. 2360. The U.S. Supreme Court held that collateral estoppel barred the State from re-trying the defendant on the charges on which the jury hung, reasoning that because "the possession of insider information was a critical issue of ultimate fact in all of the charges against petitioner, a jury verdict that necessarily decided that issue in his favor protects him from prosecution for any charge for which that is an essential element." *Id.* at 123, 129 S.Ct. 2360.

In *Dowell*, after a jury acquitted the defendant of the victim's murder, the State sought to prosecute him for the victim's aggravated forcible rape. 311 S.W.3d at 836. This court held that collateral estoppel barred the rape prosecution because, in light of the State's theory of the case in the first trial, a jury could not rationally find that the defendant forcibly raped the victim but did not commit the violence that resulted in her death. *Id.* at 839. In *State ex rel. Hines*, the State charged the Defendant with rape and sodomy after a jury had acquitted the defendant of a kidnapping charge arising out of the same incident. 803 S.W.2d at 652. The court held that the verdict of acquittal collaterally estopped the prosecution for rape and sodomy because the evidence established "only one continuing act of forcible compulsion by [the defendant]" and the first jury acquitted "because it found the forcible compulsion lacking." *Id.* Point denied.

■ In his second point on appeal, Defendant claims the trial court plainly erred in overruling his objections to the admission of victim impact testimony during the guilt phase of trial. Specifically, Defendant contends that Victim's testimony relating to her emotional state following the assault was not relevant, had no probative value, and "was elicited purely to evoke sympathy for the complaining witness and was not probative as to any element of the charged offense." The State counters that the trial court did not plainly err in admitting this evidence because it was relevant to Victim's credibility and the elements of force and lack of consent.

Defendant concedes that he did not preserve this claim in the trial court and therefore seeks plain error review. In reviewing for plain error, we must first determine whether the claim of error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009) (quotation omitted). "If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* at 607–08 (quotation omitted).

At the jury trial, the prosecutor asked Victim, "Tell the jury what you've done from a coping, a surviving standpoint— well, let's talk about the months after you were raped?," and defense counsel objected on the grounds of relevancy. The prosecutor explained to the court, outside the

hearing of the jury, that Victim was the State's only identification witness and her testimony about her behavior and mental state following the crimes was relevant to her credibility. After the trial court overruled defense counsel's objection, Victim testified that, immediately after the assault, she and her husband had a security system installed in their home. Victim explained that the security system had a panic button, and "for a long time, many months, [she] would arm the system and [she] would carry that panic button with [her] in the house from room to room" because she was "scared" and "didn't want to be alone." Victim also testified: "I went to counseling fairly quickly because I knew I had to go through the process of getting healed to get over this and I went for at least a year, maybe a little more and it helped. I was so scared and panicked for many, many, many months."

In regard to the long-term effects of the rape, Victim testified that she resumed counseling when she learned about the trial and stated, "I have to have a security system wherever I live. I have to have a dead bolt on my bedroom door." Victim elaborated that she has a "cell backup" on her security system "so if any lines are cut, the phone lines, the cell will call the security company." Victim also stated that, when exercising in her subdivision, "I always am looking around me, you know, throughout the walk, and if there is anybody, could even be a woman, if I see someone come toward me, I bolt across the street and I run until they're out of my sight."

█ "Common experience teaches us a sexual offense can cause behavioral and personality changes in the complainant." *State v. Burke,* 719 S.W.2d 887, 890 (Mo. App. E.D.1986). Consequently, "[e]vidence of physical and psychological changes in the victim is relevant to prove

the elements of the sexual offense itself and thus may be admitted to show the offense did in fact occur." *State v. Seiter,* 949 S.W.2d 218, 223 (Mo.App. E.D.1997). We further note that "[t]he trial court has broad discretion in ruling on the admissibility of evidence where the issue is relevancy." *State v. Kreutzer,* 928 S.W.2d 854, 867 (Mo. banc 1996).

In this case, the State charged Defendant with aggravated forcible rape under a theory of accomplice liability. The trial court instructed the jury to find Defendant guilty of this offense if it found that: another person had sexual intercourse with victim by the use of forcible compulsion; the Defendant or another person displayed a deadly weapon in a threatening manner; and Defendant acted together with another person in committing the offense. Victim's testimony at trial established that, as she was returning home from a walk, a man grabbed her from behind, held a gun to her head, threatened to "blow [her] head off," dragged her to a backyard where another man was waiting, and hit her head with the gun. While the second man pointed the gun at Victim, the first man vaginally raped her and forced her to perform oral sex. The first man then held the gun while the second man vaginally raped Victim. Before leaving, the men threatened to kill Victim if she reported their crimes.

Victim's testimony as to the emotional trauma she suffered as a result of the Defendant's crime, as well as the therapy she received and safety measures she continued to take more than twenty years later, was relevant to the elements of force, display of a deadly weapon, and the presence of more than one actor. *See, e.g., State v. Phillips,* 670 S.W.2d 28, 32 (Mo. App. W.D.1984) (holding that the victim's testimony "as to mental trauma and the receipt of therapy therefor (the nature of

which and its results not being in evidence) was certainly relevant to the brutality of the assaults, the elements of force involved, and the lack of consent thereof, all elements of the state's case."). Based on our review of the record, we conclude that Defendant failed to establish that the admission of Victim's testimony resulted in manifest injustice or a miscarriage of justice. *See, e.g., State v. Edwards,* 116 S.W.3d 511, 538 (Mo. banc 2003). Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and KURT S. ODENWALD, J., concur.