

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

KENNETH E. FIGGINS, SR.,                    )
                                            )
            Appellant,                      )
                                            )
    v.                                      )    WD77356
                                            )
STATE OF MISSOURI,                          )    Opinion filed:  June 23, 2015
                                            )
            Respondent.                     )

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### The Honorable Kathleen A. Forsyth, Judge

Before Division Four:  Alok Ahuja, Chief Judge,
Joseph M. Ellis, Judge and Janet Sutton, Special Judge

Kenneth Figgins, Sr. appeals from the denial of his Rule 24.035 motion for post-conviction relief following an evidentiary hearing.  For the following reasons, the motion court's ruling is affirmed.

Early in the morning on November 28, 2008, two armed men posing as law enforcement officers entered the apartment of Theresa Cox, held the individuals present in the apartment at gunpoint, and stole assorted property.  Appellant was subsequently identified by multiple victims as one of the two robbers.

Appellant was charged in the Circuit Court of Jackson County with one count of burglary in the first degree, § 569.160; one count of robbery in the first degree, § 569.020; four counts of kidnapping, § 565.110; one count of assault in the third degree,

§ 565.070; and six counts of armed criminal action, § 571.015. Following a jury trial, the jury returned verdicts of guilty on ten counts, but acquitted Appellant on one of the kidnapping counts (alleging that he had confined Brandon Kenney for the purpose of committing first-degree robbery), the armed criminal action count associated with that kidnapping count, and the assault in the third degree count (alleging that he had knowingly caused offensive or provocative contact with Cox). Defense counsel requested that the jury be polled. During the polling, Appellant made several outbursts protesting his innocence and telling the jury, "I hope you hear my babies crying at night when I'm in jail." When asked if the guilty verdicts were her true verdicts, Juror #7 initially answered "yes" but then changed her answer to "no, honestly" and indicated that she had reasonable doubt as to Appellant's guilt.

The trial court accepted the three not guilty verdicts and sent the jury back for further deliberation on the remaining ten counts. Eventually, the jury was deemed to be hung, and the trial court declared a mistrial as to the ten remaining counts.

Appellant subsequently filed a motion asking the court to dismiss the ten remaining counts on double jeopardy grounds, asserting that the State should be collaterally estopped from trying him on those counts. That motion was denied.[1]

On September 17, 2010, Appellant appeared before the court and entered an *Alford* plea[2] on the first degree robbery count. In exchange for his plea, the State

---

[1] Appellant subsequently sought a writ of prohibition from this Court asserting his double jeopardy claims, and that motion was summarily denied. However, "the denial of a writ without the issuance of an opinion 'is not a conclusive decision on the merits of the issue presented.'" *McKim v. Cassady*, 2015 WL 252295 at *5 (Mo. App. W.D. 2015) (quoting *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 61 (Mo. banc 1999)).

[2] "In *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the U.S. Supreme Court recognized a defendant could choose to plead guilty to a charged offense and accept criminal penalty, although not admit actual guilt, when the record strongly supported a finding of guilt." *Johnson v. State*, 427 S.W.3d 299, 301 n.1 (Mo. App. E.D. 2014).

2

agreed to dismiss all of the other remaining counts and to recommend a sentence of no more than twenty years imprisonment. After questioning Appellant about his understanding of the plea agreement and the rights he would be waiving, the plea court accepted Appellant's plea. The plea court subsequently sentenced Appellant to a term of fifteen years imprisonment.

On January 18, 2011, Appellant filed a timely motion for post-conviction relief under Rule 24.035. An amended motion was subsequently filed by appointed counsel. In relevant part, Appellant's motion asserted (1) that his conviction and sentence on the robbery count violated his right to be free from double jeopardy, (2) that plea counsel was ineffective for failing to make a double jeopardy objection at the plea hearing, and (3) that sentencing counsel was ineffective for failing to make a double jeopardy objection at the sentencing hearing. Following an evidentiary hearing, the motion court denied Appellant's motion. Appellant brings three points on appeal.

Appellate review of the motion court's denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. *Hastings v. State*, 308 S.W.3d 792, 795-96 (Mo. App. W.D. 2010) (quoting *Rule 24.035(k)*). "A motion court's findings and conclusions are clearly erroneous only if the Court, after reviewing the entire record, is left with the definite and firm impression that a mistake has been made." *Gehrke v. State*, 280 S.W.3d 54, 56-57 (Mo. banc 2009). "We presume that the motion court's findings and conclusions are correct, and defer to the motion court's determinations of credibility." *Nichols v. State*, 409 S.W.3d 566, 569 (Mo. App. E.D. 2013) (internal quotation omitted).

In his first point, Appellant contends that the motion court erred in denying his post-conviction motion because double jeopardy precluded the court from convicting

3

and sentencing him on the robbery count.  He argues that his acquittal on three counts by the jury served to preclude any further prosecution based upon collateral estoppel, asserting that the jury must necessarily have determined that his mistaken identity defense was valid and that someone else committed the crimes charged.  In his second point, Appellant claims that the motion court erred in failing to find plea counsel ineffective for failing to make a double jeopardy objection based upon collateral estoppel at the plea hearing.  Similarly, in his third point, Appellant contends that the motion court erred in failing to find sentencing counsel ineffective for failing to make a double jeopardy objection at the sentencing hearing.[3]

"The Fifth Amendment to the United States Constitution provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'"  ***State v. Cusumano***, 399 S.W.3d 909, 914 (Mo. App. E.D. 2013) (internal quotation omitted). "This protection applies to the states through incorporation into the Due Process Clause of the Fourteenth Amendment."  ***Id***.

"In *Ashe v. Swenson*, [397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970),] the Supreme Court held that the federal rule of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy and applies to the states."  ***State v. Simmons***, 955 S.W.2d 752, 760 (Mo. banc 1997).  "The Court stated that the principle 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"  ***Id***. (quoting ***Ashe***, 397 U.S. at 448, 90 S.Ct. at 1194).

---

[3] The State argues on appeal that Appellant waived any direct challenge to his conviction on double jeopardy/collateral estoppel grounds, as asserted in his first point, by pleading guilty.  Because the ineffective assistance of counsel claims asserted in Appellant's second and third points require consideration of the merits of his double jeopardy claim and because, as explained *infra*, we find his double jeopardy claim wholly lacking in merit, we need not, and do not, consider whether Appellant's right to directly challenge his conviction on that basis was waived by his guilty plea.

"Its import in the criminal context, considering the 'ultimate fact' language from *Ashe*, is that if a jury's decision can be distilled to a specific and necessary finding of one particular fact, or finding on one specific issue, that fact or issue is barred from relitigation." *Id*. Accordingly, "[a]s a general proposition, collateral estoppel bars relitigation of a specific fact or issue that was unambiguously determined by a previous jury." *Id*.

"The doctrine of collateral estoppel only applies in a criminal case when the issue determined in the prior case is the same as the issue in the pending case." *State v. Dowell*, 311 S.W.3d 832, 837 (Mo. App. E.D. 2010). "The defendant bears the burden of showing that his prior acquittal bars the present prosecution because the verdict there necessarily decided the issues now in litigation." *Cusumano*, 399 S.W.3d at 915 (internal quotation omitted).

"To ascertain what issues a jury must have decided when it reached a general verdict, a court must examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."[4] *Id*. at 914-15 (internal quotation omitted). "Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *Id*. at 915 (internal quotation omitted).

---

[4] In conducting this analysis, "[a] hung count is not a 'relevant' part of the 'record of the prior proceeding.'" *Yeager v. United States*, 557 U.S. 110, 121, 129 S.Ct. 2360, 2367, 174 L.Ed.2d 78 (2009). "Because a jury speaks only through its verdict, its failure to reach a verdict cannot – by negative implication – yield a piece of information that helps put together the trial puzzle." *Id*. "Unlike the pleadings, the jury charge, or the evidence introduced by the parties, there is no way to decipher what a hung count represents." *Id*. at 2368. "[C]onjecture about possible reasons for a jury's failure to reach a decision should play no part in assessing the legal consequences of a unanimous verdict that the jurors did return." *Id*. Accordingly, "consideration of hung counts has no place in the issue-preclusion analysis." *Id*.

5

In rejecting Appellant's claims, the motion court noted:

> It does not require speculation on the part of this Court for it to conclude that the jury acquitted [Appellant] on the charges relating to Kenney (Counts XI and XII) and on the assault charge relating to Cox (Count XIII) as the result of the State's failure to prove that the crimes were committed at all, rather than the identity of the perpetrator. The State provided no testimony from the victim of the alleged kidnapping, in the case of Kenney, and only the most meager testimonial description of the event giving rise to the alleged assault against Cox. Given the evidence produced by the State in this matter, it is infinitely more reasonable for this Court to find that the jury's acquittal was based upon the State's failure to prove, beyond a reasonable doubt, that the crimes charged in Counts XI through XIII occurred . . .
>
> The jury's determination that [Appellant] did not unlawfully confine Kenney for a substantial period for the purpose of facilitating the commission of robbery with and through the knowing use, assistance and aid of a deadly weapon does not preclude a factual determination that [Appellant] forcibly stole property from Cox, and in the course thereof [Appellant] or another participant was armed with a deadly weapon. Likewise, the jury's determination that [Appellant] did not cause offensive or provocative physical contact with Cox does not preclude a factual determination that [Appellant] forcibly stole property from Cox, and in the course thereof [Appellant] or another participant was armed with a deadly weapon.

The motion court's reasoning is sound.

At trial, Appellant did not concede that the charged events had occurred. In addition to challenging the credibility of the victim's identification, he also challenged the credibility of their testimony with regard to the various charged crimes having even been committed. He noted that multiple items of significant value had not been taken from the apartment and asserted that "real victims" of such crimes would not have behaved the way these victims had. He emphasized that Cox had taken a nap after the alleged incident, that none of the victims contacted the police that day, that there were inconsistencies in the victims' accounts, and that the apartment had been cleaned.[5] In

---

[5] Indeed, during closing argument, defense counsel stated:

6

short, his defense was not limited solely to a claim of misidentification as argued on appeal.[6]

With regard to the kidnapping and armed criminal action counts related to Kenney, the State alleged that Appellant had unlawfully confined Kenney without his consent for a substantial period of time for the purpose of facilitating the commission of the robbery. Kenney did not testify at trial, and Defendant's attorney emphasized the fact that the witnesses that testified to his presence during the robbery first made those assertions two weeks before trial, almost seven months after the robbery. The credibility of those witnesses was strongly challenged by the defense. The jury could simply have determined that it was not sufficiently proven that Kenney was present in the apartment during the incident. In the alternative, the jury could have concluded that the State failed to prove that Kenney had been confined during the incident, that any such confinement was for a substantial period, or that such confinement was without Kenney's consent.

With regard to the assault charge, Appellant was charged with having "caused physical contact with Cox, knowing that Cox would regard such contact as offensive or provocative." Cox testified that, while she was alone in her bedroom with Appellant,

_____

You should expect people, victims, real victims, to tell the truth. Because a real victim would have an interest in protecting themselves, in telling the police everything they know as soon as they can get some relief, to get some protection. It is counter-intuitive to do anything to the contrary. A real victim does not take a two hour nap with her boyfriend after being robbed. Real victims do not remain in an apartment with all of their friends for hours and hours, cleaning up a crime scene. Real victims do not wait nearly eight months to tell the truth.

[6] In contrast, in **Ashe v. Swenson**, 397 U.S. 436, 438, 90 S.Ct. 1189, 1191, 25 L.Ed.2d 469 (1970), the defense "made no attempt to question [the victims'] testimony regarding the holdup itself or their claims as to their losses," and "[t]he proof that an armed robbery had occurred and that personal property had been taken from Knight as well as from each of the other [victims] was unassailable." The record was "utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery," and "[t]he single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers." 397 U.S. at 445, 90 S.Ct. at 1195. Accordingly, the case at bar is readily distinguishable from *Ashe*.

Appellant "just squeezed [her] butt a little" and that he "touched [her] butt and that's it." While Cox testified that she screamed when Appellant touched her, no other witnesses testified that they heard her scream at any point despite the fact the bedroom door was left open. Also, while Cox testified that, after Appellant touched her bottom, he pick out some clothes for her and had her put them on, testimony from other witnesses reflects that Cox was still wearing a towel and got dressed after the robbers left. In addition, Defense counsel pointed out inconsistencies in Cox's various accounts of what had occurred and emphasized the number of times that Cox was shown to have lied to the police. The jury most certainly could have, and most likely did, simply disbelieve Cox's testimony that Appellant had touched her in an offensive or provocative manner.

Appellant pleaded guilty to the first degree robbery count, which accused him of forcibly stealing specified items from Cox while he or another participant was armed with a deadly weapon. Determinations by the jury that Appellant did not assault Cox and did not unlawfully confine Kenney do not unambiguously preclude a finding that he robbed Cox. "A jury may accept part of a witness's testimony, but disbelieve other parts." *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010) (internal quotation omitted).

Because a rational jury could have grounded its acquittal verdicts upon an issue or issues other than that which the defendant would have sought to foreclose from consideration,[7] collateral estoppel would not preclude the plea court from accepting

---

[7] Appellant mistakenly argues that the plea court's decision cannot be reconciled with *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). In that case, the Supreme Court expressly limited its consideration to "whether an apparent inconsistency between a jury's verdict of acquittal on some counts and its failure to return a verdict on other counts affects the preclusive force of the acquittals under the Double Jeopardy Clause of the Fifth Amendment." 557 U.S. at 112, 129 S.Ct. at 2362-63. It concluded that the Fifth Circuit Court of Appeals had erred in concluding that an apparent conflict between the acquittals and the hung counts barred the application of issue preclusion in the case. 557

Appellant's guilty plea on the robbery count. Because any such objection would have been meritless, counsel cannot be deemed ineffective for failing to object on that basis at the plea hearing or sentencing hearing. ***Mullins v. State***, 262 S.W.3d 682, 685 (Mo. App. E.D. 2008). "If there is no double jeopardy violation, a claim that counsel was ineffective for failure to object on double jeopardy grounds is moot." ***Id***. Points denied.

The motion court's decision is affirmed.

_____

Joseph M. Ellis, Judge

All concur.

---

U.S. at 115, 129 S.Ct. at 2365. The Court expressly declined to address the Government's contention that "the petitioner [had nevertheless] failed to show that the jury necessarily resolved in his favor an issue of ultimate fact that the Government must prove in order to convict him of insider trading and money laundering," stating "[w]e decline to engage in a fact-intensive analysis of the voluminous record, an undertaking unnecessary to the resolution of the narrow legal question we granted certiorari to answer." 557 U.S. at 125, 126, 129 S.Ct. at 2370. It left consideration of that issue for the Fifth Circuit. 557 U.S. at 126, 129 S.Ct. at 2370.